**Charles E. GREGORY et ux., Appellants,**

**v.**

**Richard ROBERSON, Appellee.**

**No. 15864.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Feb. 17, 1972.

Rehearing Denied March 16, 1972.

Bill Allen, Houston, for appellants.

Tom W. Foster, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a take nothing judgment in a case where Mrs. Gregory was allegedly injured when the vehicle she was driving was hit from the rear by an automobile driven by appellee.

In a jury trial the jury found appellee failed to keep a proper lookout and this was a proximate cause of the collision. The jury, however, found in answer to Special Issue 9 that Mrs. Gregory stopped her vehicle extending into the West Loop feeder street. In answer to Special Issue

No. 10, the jury found this action of appellant in stopping in the feeder street to be negligence, and in answer to Special Issue No. 11, this negligence was a proximate cause of the collision.

Appellants, for reversal, assert that there is no evidence to support the jury's answers to Special Issues 9, 10 and 11, and, alternatively, that the evidence is insufficient to support the jury's answers.

The collision occurred within a right turn lane designed for traffic proceeding east on Westheimer and turning to the right so as to proceed south on the West Loop feeder street. The right turn lane in question existed by reason of a small traffic island which served to separate it from straight ahead, east bound traffic on Westheimer. The traffic signal light applicable to traffic in the right turn lane had the following color sequence: green-21 seconds, amber-3 seconds, and red-36 seconds. Appellee conceded that the traffic ahead of him on Westheimer traveling east was heavy, and that he made quite a few stops before entering the right turn lane. After his and appellant's cars reached the right turn lane, appellee testified that the signal light applicable to that lane was red, and they, as well as another car ahead of Mrs. Gregory, had to stop. It was his version that, when the right turn lane signal light turned green, there was an overflow of cars coming from other directions (although he did not state from what direction or directions), which blocked the intersection and the right turn lane traffic, thus preventing any car from safely pulling out. After the conflicting traffic cleared, appellee claimed that the two cars ahead of him started up, and he turned his head to the left to check for any other conflicting traffic sufficiently that Mrs. Gregory's car was not in his view; when he turned his head back, her car was stopped, and he did not then know whether the right turn lane signal light was red, green or yellow. He saw her stopped about one-half car length ahead of him, immediately went for his brakes, but still struck the

rear of her car a straight-ahead, square type blow, with his front bumper riding over her bumper. Appellee testified he did not know how far his car traveled after the initial impact at one point, but, on direct examination answered that his car did not travel after impact. After the cars came to rest, he described the location of the appellant's car as about half-way into the feeder and half-way in the service lane.

Appellant had entered Westheimer from Joske's parking area, and she also recalled eastbound traffic on Westheimer before reaching the right turn lane as congested. She also stated that before the collision her last stop had been on Westheimer before reaching the right turn lane. She testified that immediately before the collision the light changed from green, to yellow, to red, and that she made a normal stop in the right turn lane about three feet from the feeder street. As a result of the rear end impact, she said her car was pushed some three feet out into the feeder street. She testified after she stopped she kept her foot on the brake.

In reviewing the no evidence and factually insufficient evidence points, this court is governed by and has followed the often stated rules pertaining to such reviews as set out in Garza v. Alviar, 395 S. W.2d 821 (Tex.1965).

Thus in appellants' first point of error as to Special Issue No. 9, the only evidence offered to support the finding that Mrs. Gregory's (appellant's) car extended into the feeder street at the time she stopped was appellee's testimony that her car was about half way into the feeder and half way into the service lane *after* the cars came to rest. There was conflicting testimony from appellee himself as to how far he traveled after impact, from none to he "really didn't know." He also testified that the impact was minor, and that there was little damage done. He testified he was nearly stopped when the collision occurred. He still had his foot on the brake. Appellee never testified as to where appel-

lant's car was immediately before impact, and also that he didn't know whether the light was red, amber, or green. Appellee testified the cars were only one foot apart after impact and thus contends appellant's car would have had to stop partially in the feeder street before impact.

The burden of proof was on appellee to present evidence which if believed would show that appellant did not begin her stop in obedience to the amber light prior to her entry into the intersection even though her vehicle may have been three feet on the left side into the intersection when it came to rest. Entry at the intersection being on a curve to the right, the right side of the vehicle would have been less than three feet into the feeder street. We may assume that when coming to a stop the vehicle was in the intersection and we feel there is evidence from which the jury could conclude the process of stopping was completed while she was part way into the intersection. This, under the facts of this case, is not controlling. The process of stopping does not consist merely in coming to rest. It involves the matter of reaction time to consider whether to stop, the time to take action designed to bring the vehicle to a stop, and the time it takes thereafter to bring the vehicle to rest. Here no one, except appellant, saw the traffic lights immediately before the collision. Appellee testified he did not. Appellant testified the amber light came on before she reached the intersection when she was going about 10 miles an hour and she began her stop when the amber light came on and completed it when the light changed to red. There is no direct or circumstantial evidence to the contrary. Considering the speed, the reaction time and the three second time for the amber light, it would be unreasonable to conclude appellant did not begin her stop before entering the intersection.

Reaching the above conclusion as we have, we hold that appellant breached no duty to appellee. Article 6701d, Sec. 33, Vernon's Ann.Tex.Civ.St., at the time of the collision here involved, provided as follows:

"(b) Yellow alone or 'Caution' when shown following the green or 'Go' signal.

"1. Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red or 'Stop' signal is exhibited."

The parent case construing this statute is Bass v. Stockton, 236 S.W.2d 229 (CCA–San Antonio), n. w. h. The court held that merely evidence that a person refused or failed to run a caution light was insufficient to support a finding of negligence. That under the facts of this case stopping in obedience to a caution or stop signal, and nothing more, shows no violation of a duty to a following driver, is held by the following cases: Brock v. Boss, 416 S.W.2d 456 (CCA–Waco), ref., n. r. e.; Colom v. Vititow, 435 S.W.2d 187 (CCA–Houston, 14th), ref., n. r. e.; Kuykendall v. Doose, 260 S.W.2d 435 (CCA–Amarillo), ref., n. r. e.

We are further of the view that there is no evidence to establish proximate cause. There is no evidence that appellant started through the intersection and then made a sudden stop. Appellee himself testified he was looking to his left and when he looked up he was about one-half car length behind appellant's vehicle. He immediately put his brakes on but was unable to stop. Appellant, under the undisputed evidence, had already stopped. Appellee did not see appellant stop or see her in the process of stopping. The only evidence of the nature of the stop was that it was a gradual one, not a sudden one. The stopping by appellant could not have affected appellee's action because he did not see it. Ussery v. Hodges, 417 S.W.2d 332 (CCA–Tyler), ref., n. r. e.

The judgment of the trial court is reversed and rendered.